UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-02203 JAK (SSx) | Date | June 28, 2016 |
| Title | Maren Miller v. Tri Marine Fish Company, et. al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**      (IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION TO REMAND (DKT. 11)

### I. Introduction

Maren Miller ("Plaintiff"), acting as the Personal Representative of the Beneficiaries and Estate of Godofredo Recto, Jr. III ("Decedent"), brought this action in the Los Angeles Superior Court against Tri Marine Fish Company, LLC, Tri Marine Management Company, LLC, Tri Marine Fishing Management, LLC, Cape Finisterre Fishing LP and Cape Finisterre Fishing LLC (collectively, "Defendants"). Dkt. 1-2. The Complaint advances claims arising out of the alleged wrongful death of Decedent. They are based on the Jones Act, 46 U.S.C. § 30104, the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 30301, and the general maritime law of the United States.

On March 31, 2016, Defendants removed this action pursuant to 9 U.S.C. § 205. That statute permits removal "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards] . . . ." ("Convention"). Dkt. 1. On May 2, 2016, Plaintiff filed a Motion to Remand ("Motion"). There, Plaintiff contends that, because there is no valid and enforceable written arbitration agreement between the parties that is within the scope of the Convention, there is no subject matter jurisdiction over this action. Dkt. 11. Defendants opposed the Motion (Dkt. 15) and Plaintiff replied. Dkt. 21.

A hearing on the Motion was held on June 27, 2016, and the matter was taken under submission. Dkt. 24. For the reasons stated in this Order, the Motion is **DENIED**.

### II. Factual Background

#### A. The Underlying Incident

The Complaint alleges that Decedent was a citizen of the Republic of Philippines who was legally residing in American Samoa at the time of his death. Dkt. 1-2, ¶ 3. At the time of his death, Decedent was employed by Defendants as a commercial fisherman aboard the F/V Cape Finisterre ("Vessel"). *Id.* The Vessel is a United States "flagged tuna fishing seiner," with U.S. Coast Guard Official Number 610466. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-02203 JAK (SSx) | Date | June 28, 2016 |
|---|---|---|---|
| Title | Maren Miller v. Tri Marine Fish Company, et. al. | | |

The Complaint alleges that in December 2015, the Vessel was on a routine fishing trip to the Western Pacific Ocean. *Id.* It also alleges that, on December 10, 2015, Decedent was trapped in a freezer or cold room of the Vessel and later died of hypothermia. *Id.* Decedent is survived by his widow, Liezel Recto, and his daughter, Erma Recto, who are both Philippine citizens. *Id.* ¶ 2.

### B. Employment Contracts and Agreements Identified in Defendants' Notice of Removal

Defendants presented two agreements -- and other supporting documentation -- in support of the removal of this action pursuant to § 205, and their claim that the issues raised are subject to arbitration. These documents are summarized in the following discussion.

1. Philippines Overseas Employment Administration ("POEA") Employment Contract ("POEA Agreement")

The POEA Agreement is a one-page document that is dated September 8, 2014. It bears the signatures of Decedent and a representative of the employer, which is identified as Able Maritime Seafarers, Inc. Dkt. 1-5, Ex. E. The POEA Agreement states that it is a 12-month contract of employment for the vessel "FV 'Cape San Lucas,'" and that the principal/shipowner is "Tri Marine Fishing Management, LLC." Defendants note that, although the POEA Agreement identifies the vessel as Cape San Lucas, "[i]t is common . . . for Filipino seafarers to work aboard a different vessel than that identified in the POEA agreement. Such was the case here. Following execution of his POEA Agreement, Decedent worked aboard several Tri Marine vessels." Dkt. 1, ¶ 8.

The POEA Agreement also states that "[t]he herein terms and conditions are in accordance with POEA Governing Board Resolution [N]o. 09 and Memorandum Circular No. 10, both Series of 2010, shall be strictly and faithfully observed." Dkt. 1-5, Ex. E. The POEA Agreement does not otherwise explain these Circulars, nor was either attached to the POEA Agreement when Decedent signed it.

2. Memorandum Circular No. 10 (Series of 2010) ("Circular No. 10") and POEA Standard Terms and Conditions

Circular No. 10 states that its subject is "Amended Standard Terms and Conditions Governing the Overseas Employment of Filipino Seafarers on-Board Ocean-Going Ships." Dkt. 1-6, Ex. F at 1 (capitalization omitted). Circular No. 10 then sets forth six "guidelines" for the implementation of the Amended Standard Terms and Conditions. One of these provides that the terms and conditions are "the minimum requirements acceptable to the POEA for the employment of Filipino seafarers on board ocean-going ships." *Id.*

The Notice of Removal also included a copy of the "Standard Terms and Conditions Governing the Overseas Employment of Filipino Seafarers on Board Ocean-Going Ships." *Id.* at 3 (capitalization omitted). Section 29 of this document, which sets forth the process for settlement of disputes, provides as follows:

> In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-02203 JAK (SSx) | | Date | June 28, 2016 |
|---|---|---|---|---|
| Title | Maren Miller v. Tri Marine Fish Company, et. al. | | | |

> exclusive jurisdiction of the voluntary arbitrator or panel of voluntary arbitrators. If the parties are not covered by a collective bargaining, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC), pursuant to Republic Act (RA) 8042 otherwise known as the Migrant Workers and Overseas Filipinos Act of 1995, as amended, or to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators.

*Id.* at 18.

> 3. November 26, 2015 Employment Contract with Tri Marine ("Tri Marine Agreement")

Decedent executed an employment contract with Tri Marine ("Tri Marine Agreement") on November 26, 2015. Dkt. 1-7, Ex. G. Pursuant to the Tri Marine Agreement, Decedent was to work as a deckhand aboard the Cape Finisterre. The Tri Marine Agreement provides that it is "effective for one fishing trip. A fishing trip commences at the time the Crew Member first joins the Vessel and continues throughout the ensuing trip until the Vessel has been unloaded and cleaned." *Id.* at 1 (underlining omitted).

Paragraph 11 of the Tri Marine Agreement includes an arbitration and choice of law provision which states in relevant part:

> It is specifically agreed that any and all disputes or claims of any nature arising out of, or relating to, this employment agreement or the Crew Member's employment aboard this Vessel shall be subject to mandatory binding arbitration. Any such arbitration shall occur in American Samoa and be subject to the Revised Uniform Arbitration Act.

*Id.* at 4.

Paragraph 12 of the Tri Marine Agreement adds that, as to Filipino Seafarers who are subject to the terms and conditions of the POEA standard employment contract, the same terms are incorporated into the agreement in place of its Paragraph 11. *Id.* at 5. The Tri Marine Agreement states that this incorporation of terms includes the "dispute settlement procedures set forth therein, which are incorporated by reference herein, and provide for either arbitration in the Philippines or submission to the Filipino National Labor Relations Commission (NLRC)." *Id.*

> C. Commencement of Arbitration Proceedings

On March 2, 2016, Tri-Marine Fishing Management, LLC and Able Maritime Seafarers, Inc. filed a petition for arbitration before the Philippine National Labor Relations Commission ("NLRC") of Plaintiff's claims arising out of Decedent's death. Dkt. 21 at 2. Plaintiff has objected to the arbitration on the grounds that Decedent did not agree to arbitrate any claims. A Motion to Dismiss and Motion to Stay Arbitration Proceedings are currently pending before the NLRC. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-02203 JAK (SSx) | | Date | June 28, 2016 |
|---|---|---|---|---|
| Title | Maren Miller v. Tri Marine Fish Company, et. al. | | | |

**III.     Analysis**

   **A.     Legal Standard**

      1.     Motion to Remand

A motion to remand challenges the removal of an action. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). In general, a state civil action may be removed only if, at the time of its removal, it is one that initially could have been brought in a federal court. 28 U.S.C. § 1441(a). Because federal courts are ones of limited jurisdiction, the removal statute is to be strictly construed; any doubt about removal is to be resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The removing party has the burden of establishing that it was proper to do so. *Id.* "If a case is improperly removed, the federal court must remand the action because it has no subject-matter jurisdiction to decide the case." *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1113 (9th Cir. 2000).

      2.     Removal Pursuant to the Convention

The Convention is a multilateral treaty providing for "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." Convention, art. I(1), 21 U.S.T. 2517. Congress approved the Convention by enacting Chapter II of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-08.[1] "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

The FAA provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203. In this regard, § 205 of the FAA provides:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

9 U.S.C. § 205.

---

[1] Although this implementing legislation was codified in the FAA, its terms may differ from others in the FAA. *See* 9 U.S.C. § 208 ("Chapter 1 [of the FAA] applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-02203 JAK (SSx) | Date | June 28, 2016 |
|---|---|---|---|
| Title | Maren Miller v. Tri Marine Fish Company, et. al. | | |

Although courts generally "strictly construe the removal statute against removal jurisdiction," *Gaus*, 980 F.2d at 566, "the plain language of § 205 provides federal courts with remarkably broad removal authority." *Infuturia Global Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1138 n.5 (9th Cir. 2011) (citing *Beiser v. Weyler*, 284 F.3d 665, 674 (5th Cir. 2002) ("[E]asy removal is exactly what Congress intended in § 205.")). Section 205 is triggered by "just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense." *Id.* at 1138 (citing *Beiser*, 284 F.3d at 669).

Notwithstanding the foregoing rules, "the removing party continues to bear the burden of establishing federal jurisdiction." *Freaner v. Valle*, 2011 WL 5596919, at *2 (S.D. Cal. Nov. 17, 2011). Thus, the removing party must show that: (i) the arbitration agreement falls under the Convention; and (ii) the agreement relates to the plaintiff's suit. *Id.*; *Sunvalley Solar, Inc. v. CEEG (Shanghai) Solar*, 2015 WL 5471434, at *2 (C.D. Cal. Sept. 18, 2015).

    **B.**    **Application**

        1.    <u>The Parties' Positions re Enforceability of the Arbitration Agreements</u>

            a)    Plaintiff's Position

Plaintiff argues that in ruling on a motion to remand, a district court must determine that there is no triable issue of fact as to the existence of a valid and enforceable arbitration agreement. Dkt. 11-1 at 8, 16-18. Plaintiff contends that this standard has not been met here for several reasons.

*First*, except for Cape Finisterre Fishing LP, none of the other Defendants was a party to any of the agreements identified by Defendants in the Notice of Removal. Nor does any of these Defendants have any apparent legal relationship to the Vessel. *Id.* at 9-10.

*Second*, the Tri Marine Agreement refers to the Standard POEA Terms and Conditions, which contain an arbitration clause. However, Defendants have not submitted any evidence to show that any other writings, including these Terms and Conditions, were ever presented to Decedent. *Id.* at 10-11. Plaintiff also notes that the Tri Marine Agreement is in English, but that Decedent spoke Tagalog, and could neither read nor write English with sufficient proficiency to understand this contract. *Id.* at 11. Finally, Plaintiff claims that, because the Tri Marine Agreement was entered after Decedent commenced work preparing the Vessel for its departure, it is in violation of 46 U.S.C. § 10601, which requires that a written contract be signed "[b]efore proceeding on a voyage . . . ." 46 U.S.C. § 10601(a).

*Third*, the POEA Agreement, which is attached to the Notice of Removal, is also in English. *Id.* at 11-12. Plaintiff notes that the POEA Agreement does not contain an arbitration clause. Although Defendants state that the POEA Agreement incorporates the terms of POEA Circular No. 10, Plaintiff reiterates that there is no evidence that the Circular No. 10 was attached to the POEA Agreement or otherwise presented or explained to Decedent. *Id.* at 12. In a declaration from Decedent's wife, she states that she was with Decedent when he signed the POEA Agreement and can affirm that no other documents were presented to him. *Id.* at 13. Finally, Plaintiff argues that the POEA Agreement states that it is only for a 12-month term. That term began on September 11, 2014. Therefore, it had concluded by the date of Decedent's death on December 10, 2015. *Id.* at 14-15.

Case 2:16-cv-02203-JAK-SS   Document 25   Filed 06/28/16   Page 6 of 11   Page ID #:439

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-02203 JAK (SSx) | | Date | June 28, 2016 |
|---|---|---|---|---|
| Title | Maren Miller v. Tri Marine Fish Company, et. al. | | | |

*Fourth*, Circular No. 10 is only a two-page document. It neither incorporates any other document by reference nor attaches any other documents. And, it does not contain an arbitration clause. *Id.* at 12. Moreover, although the Notice of Removal attaches the Standard POEA Terms and Conditions in connection with Circular No. 10, that Circular refers to *Amended* Standard POEA Terms and Conditions, which are not attached to the Notice of Removal. *Id.* at 12-13.

*Fifth*, the agreements and contracts presented by Defendants in the Notice of Removal include three different arbitration clauses and two venue clauses. This by itself creates uncertainty and ambiguity as to which clause controls.

*Finally*, Decedent is a "ward[] of admiralty and must be given legal protection better than any other class of workers" thus any ambiguity in his employment contract must be construed against the shipowner. *Id.* at 19 (citing *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355 (1971); *Seattle-First Nat'l Bank v. Conaway*, 98 F.3d 1195, 1196-98 (9th Cir. 1996)).

        b)      Defendants' Position

Defendants contend that Decedent entered an employment contract with Tri Marine -- the POEA Agreement -- which mandates arbitration for all employment disputes through the incorporation of the terms of Circular No. 10. Dkt. 15 at 6. Defendants also contend that Decedent signed the Tri Marine Agreement, which also incorporates the POEA terms for all Filipino Seafarers, and has an additional arbitration clause for all non-Filipino Seafarers. *Id.* at 7-8.

Defendants argue that they are not required to show that the arbitration agreements presented in these various documents are enforceable in order to remove an action. *Id.* at 10. Instead, they argue that the plain language of the removal statute provides federal jurisdiction over any suit that relates to an arbitration agreement and falls under the Convention, even if it may later be determined that the agreement is unenforceable. *Id.* at 11.

        c)      Analysis

Although Plaintiff presents several colorable arguments in support of the claim that the arbitration agreements at issue may not be enforceable, they apply to the enforceability of the agreements, not their presence. The latter is a sufficient basis to establish initial jurisdiction under § 205. *See Bautista v. Star Cruises*, 396 F.3d 1289, 1301 (11th Cir. 2005) (FAA requires a "limited jurisdictional inquiry" and "Section 205 does not require a district court to review the putative arbitration agreement . . . before assuming jurisdiction"), *cert. dismissed*, 545 U.S. 1136 (2005); *Davis v. Cascade Tanks, LLC*, 2014 WL 3695493, at *4 (D. Or. July 24, 2014) ("Plaintiffs contend that this court lacks removal jurisdiction because the arbitration clause is unenforceable under the Convention based on traditional contract defenses under the common law of the United States. Defendants argue that the jurisdictional inquiry is more limited, and that the substantive enforceability of the arbitration agreement is relevant not to jurisdiction, but to whether the court should go on to enforce the agreement and stay the action in favor of arbitration. As explained on the record, I agree with Defendants' reading of the Convention's text and the case law interpreting it." (internal citations and quotation marks omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-02203 JAK (SSx) | Date | June 28, 2016 |
| Title | Maren Miller v. Tri Marine Fish Company, et. al. | | |

As stated earlier, § 205 provides that removal jurisdiction is present when: (i) the arbitration agreement falls under the Convention; and (ii) the agreement relates to the plaintiff's suit. Section 205 does not include any requirement that, as a prerequisite for removal, the removing party establish that the arbitration agreement is valid and enforceable. As *Davis* explained in reasoning that is persuasive:

> [T]hat the jurisdictional inquiry is separate from the merits of enforcement is required by the text of the Convention and the provisions in which it is implemented. The Convention provides that a court, "when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed." Convention art. II(3), 21 U.S.T. 2517. The text contemplates that only a court "seized of" the suit will turn to the question whether the arbitration clause shall be enforced. As used in article II(3), the phrase "seized of" means that the court is "in possession of" the action. *See* 14 *Oxford English Dictionary* 896 (J.A. Simpson & E.S.C. Weiner eds., 2d ed.1989); *Black's Law Dictionary* 1524 (Rev. 4th ed.1968). . . . [A] federal court cannot be "seized of an action" under this provision in the absence of federal jurisdiction, which is granted in 9 U.S.C. §§ 203 and 205.
> . . . .
> As implemented, article II(3) must be read such that in the absence of jurisdiction the district court would not be "seized of" the action. It is therefore appropriate to determine whether federal jurisdiction exists before turning to the question whether there is an allowable defense to enforcement; only a court "seized of" a suit related to an arbitration clause covered by the Convention can turn to the question whether the arbitration clause shall be enforced, and only a court with jurisdiction may be seized of the suit. Only once jurisdiction is determined is the court to turn to the enforceability of the arbitration agreement, a question which requires it to consider whether the agreement is "null and void, inoperative or incapable of being performed." Convention art. II(3), 21 U.S.T. 2517; *see also Jain v. de Mere*, 51 F.3d 686, 691 (7th Cir. 1995) ("Given that the court is properly seized of this action, it should not then be left helpless to enforce the arbitration agreement.").

2014 WL 3695493, at *5 (footnote omitted).

"[Plaintiff's] suggested approach to determining a court's jurisdiction under § 205 has the disadvantage of frontloading a merits inquiry into the district court's examination of its jurisdiction." *Beiser*, 284 F.3d at 670.[2] Thus, it improperly "conflates the jurisdictional and merits inquiries into a single step." *Id.* The language of § 205 contemplates that jurisdiction should be determinable solely from the notice of removal. 9 U.S.C. § 205 ("[T]he ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal."). Thus, the statute directs courts to treat a potential defense based on an arbitration clause "the same way that we treat offensive claims. That is, just as we determine whether a plaintiff's claim arises under federal law from the complaint alone, the statute directs us to determine whether a defendant's defense arises under federal law from the 'petition for removal' alone." *Beiser*, 284 F.3d at 671.

---

[2] In *Infuturia Global*, the Ninth Circuit approved of this analysis of § 205. 631 F.3d at 1137-38.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-02203 JAK (SSx) | Date | June 28, 2016 |
|---|---|---|---|
| Title | Maren Miller v. Tri Marine Fish Company, et. al. | | |

For these reasons, Plaintiff's arguments as to the validity and enforceability of the arbitration agreements identified by Defendants are premature. They need not be resolved in the determination of initial jurisdiction. However, if it is later determined that there is no binding arbitration agreement,[3] a renewed motion to remand would be appropriate. *See id.* at 675 ("The correct procedure for Beiser to have followed would have been to respond on the merits to Huffington's motion to compel arbitration. If successful, Beiser then could have moved to remand to the state court.").

        2.     Whether Arbitration Agreement "Falls Under" the Convention

            a)     Legal Standard

There is some uncertainty as to the proper inquiry to determine whether an agreement "falls under" the Convention. Section 202 provides:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202.

In analyzing this language, some courts have made a straightforward inquiry: Whether the agreement arises out of a commercial relationship that has some connection to international commerce. *See Beiser*, 284 F.3d at 666 n.2 ("In order for an agreement to fall under the Convention, it must arise out of a commercial relationship. At least one of the parties to the agreement must not be a U.S. citizen, or, if the agreement is entirely between U.S. citizens, it must have some 'reasonable relation' with a foreign state."); *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1044 (N.D. Cal. 2006) ("First, it must 'fall under the Convention,' which requires the agreement to have some connection to foreign entities or international commerce."); *Infuturia Global Ltd. v. Sequus Pharm., Inc.*, 2009 WL 440477, at *7 (N.D. Cal. Feb. 23, 2009).

Other courts have applied four requirements in determining whether an arbitration agreement falls under the Convention: (i) is there is an agreement in writing within the meaning of the Convention; (ii) does the agreement provide for arbitration in the territory of a signatory of the Convention; (iii) does the agreement arise out of a legal relationship, whether contractual or not, that is considered commercial; and (iv) is a party to the agreement not an American citizen, or does the underlying commercial relationship have some reasonable relation to one or more foreign states. *Balen v. Holland Am. Line Inc.*, 583 F.3d 647,

---

[3] In this regard, it is significant that Defendants have stated that they "will be filing a motion to stay and compel arbitration in which all of Plaintiff's enforceability arguments will be more thoroughly examined." Dkt. 15 at 12-13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-02203 JAK (SSx) | Date | June 28, 2016 |
| Title | Maren Miller v. Tri Marine Fish Company, et. al. | | |

654–55 (9th Cir. 2009) (citing *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir. 2005)).[4]

Ultimately the analysis here is the same under both tests. To show that the cited agreements fall under the Convention, Defendants must make a prima facie showing of each of the four factors. *Davis*, 2014 WL 3695493, at *7 n.9. Thus, "[r]esolving the question of whether the agreement falls under the Convention will ordinar[il]y prove quick and easy, without requiring too much merits-like investigation by the district court." *Beiser*, 284 F.3d at 671 n.7.

        b)      Application

Defendants assert that each of the factors is met for the following reasons: (i) both the POEA Agreement and the Tri Marine Agreement are in writing; (ii) the POEA Agreement provides for arbitration in the Philippines and the Tri Marine Agreement provides for arbitration either in the Philippines or in American Samoa, both of which are signatories of the Convention; (iii) the agreements are employment agreements, which reflect a commercial legal relationship; and (iv) at the relevant times, the Decedent was a citizen of the Philippines. Dkt. 15 at 13-14.

Plaintiff disputes only whether the first factor -- a written agreement -- has been shown. Dkt. 21 at 5. However, each of Plaintiff's arguments in support of this position focuses not on the presence of a writing, but on its validity or enforceability. Thus, Plaintiff relies on *Baricuatro v. Industrial Personnel and Management Services, Inc.*, 927 F. Supp. 2d 348 (E.D. La. 2013). However, *Baricuatro* addressed motions to dismiss for improper venue and to compel arbitration and stay the proceedings. No determination was made as to the scope of jurisdiction provided by §§ 203 and 205.

Plaintiff does not dispute the existence of the POEA or Tri Marine Agreements, nor that Decedent signed them. Instead, Plaintiff argues that none of these agreements is enforceable. That issue is not yet ripe for adjudication. Instead, because Defendants have made a sufficient showing that the POEA Agreement and Tri Marine Agreement fall under the Convention for jurisdictional purposes, it is accepted. Issues as to enforceability will be addressed in connection with the motion to compel arbitration that Defendants have promised to bring.[5]

---

[4] Many courts have addressed motions to remand, to dismiss and to compel arbitration at the same time. In those circumstances, the four factor test has been applied at the same time as a determination as to their enforceability and applicability to the claims that have been advanced. *See, e.g., Razo v. Nordic Empress Shipping Ltd.*, 2008 WL 2902184, at *2 (D.N.J. July 24, 2008), *aff'd*, 362 F. App'x 243 (3d Cir. 2009) (if the four factors are met the Convention "requires arbitration"). Other courts have concluded that when these four factors are met, arbitration is required *unless* it is determined that the agreement is "null and void." *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3d Cir. 2003); *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186-87 (1st Cir. 1982). Thus, a finding that the four factors are met in connection with determining removal jurisdiction does not preclude a later determination that the arbitration agreements are "null and void" and not binding on the objecting party. *See Davis*, 2014 WL 3695493, at *7 n.9. ("In practicality the inquiry into whether the proffered arbitration clause falls under the Convention may occasionally implicate issues also relevant to the enforceability of the arbitration clause. . . . This inquiry need not reach the full substance of the arguments regarding enforceability. Only a prima facie showing of each factor pertinent to whether the arbitration agreement 'fall[s] under the Convention' is required.").

[5] Other courts have addressed similar POEA agreements and have concluded unanimously that these contracts fall under the Convention. *See, e.g., Balen*, 583 F.3d at 655; *Bautista*, 396 F.3d at 1300; *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002) *modified by Freudensprung v. Offshore Tech. Servs., Inc.*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-02203 JAK (SSx) | Date | June 28, 2016 |
| Title | Maren Miller v. Tri Marine Fish Company, et. al. | | |

      3.      <u>Whether Arbitration Agreement "Relates to" Litigation</u>

           a)      Legal Standard

An arbitration agreement "relates to" the subject matter of an action "whenever it could conceivably affect the outcome of the plaintiff's suit." *Infuturia Global*, 631 F.3d at 1135. "The phrase 'relates to' is plainly broad, and has been interpreted to convey sweeping removal jurisdiction in analogous statutes." *Id.* at 1138. "However, § 205 does not provide for removal where the claimed connection between the arbitration agreement and the lawsuit filed in state court is too remote." *SanDisk Corp. v. SK Hynix Inc.*, 84 F. Supp. 3d 1021, 1035 (N.D. Cal. 2015) (internal quotation marks omitted). Similarly, § 205 does not apply if a defendant's assertion of jurisdiction is "absurd or impossible," *Infuturia Global*, 631 F.3d at 1138, or "frivolous." *Beiser*, 284 F.3d at 671.

An arbitration agreement may still "relate to" the subject matter of an action even where all parties named in the action are not parties to the agreement. *Infuturia Gloabl*, 631 F.3d at 1138-39 ("*AtGames* [*Holdings Ltd. v. Radica Games, Ltd.*, 394 F. Supp. 2d 1252 (C.D. Cal. 2005)] narrows the class of actions removable under § 205 by *adding* privity of contract to the prerequisites for removal jurisdiction. This holding finds no support in the language of the statute. . . . We find *AtGames* unpersuasive and decline to add any prerequisites to removal jurisdiction not expressed in the language of the statute." (emphasis in original)). "As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of 'relates to.'" *Beiser*, 284 F.3d at 669.

           b)      Application

Plaintiff does not expressly contend that the POEA and Tri Marine Agreements are unrelated to the claims advanced in this action. Instead, Plaintiff repeats the argument that there is no written agreement. Once again, this position is unpersuasive and premature. *Sunvalley Solar*, 2015 WL 5471434, at *2 ("Even if the Arbitration Agreement is not ultimately effective, removal is still proper under Section 205. Defendants need not show with any certainty that they have the right to enforce the Arbitration Agreement in order for the Agreement to 'relate to' the suit; it is sufficient that a court will need to interpret the Sales Contracts containing the Agreement in order to assess whether or not it ultimately applies.").

The arbitration clauses included within the POEA Agreement -- through incorporation of Circular No. 10 and the POEA Standard Terms and Conditions -- and the Tri Marine Agreement provide for arbitration for all claims arising out of Decedent's employment. *See* Dkt. 1-6, Ex. F at 18 ("In cases of claims and disputes arising from this employment . . . ."); Dkt. 1-7, Ex. G at 4 ("It is specifically agreed that any and all disputes or claims of any nature arising out of, or relating to, this employment agreement or the Crew Member's employment aboard this Vessel shall be subject to mandatory binding arbitration."). Thus, these arbitration agreements relate to Plaintiff's claims. Those claims arise from Decedent's death while aboard the Vessel during his employment. *See Beiser*, 284 F.3d at 669 ("Here, the two agreements are the only written contracts governing Beiser's work in Hungary. Beiser was Horizon's only employee; the

---

379 F.3d 327 (5th Cir. 2004); *Asignacion v. Schiffahrts*, 2011 WL 2118740, at *3 (E.D. La. May 25, 2011); *Acosta v. Norwegian Cruise Line, Ltd.*, 303 F. Supp. 2d 1327, 1330 (S.D. Fla. 2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-02203 JAK (SSx) | | Date | June 28, 2016 |
|---|---|---|---|---|
| Title | Maren Miller v. Tri Marine Fish Company, et. al. | | | |

contracts were entered into specifically to secure his personal expertise and advice in developing the oil interest. Developing Beiser's case will necessarily involve explaining the scope and operation of the two contracts. Even if Beiser is right on the merits that he cannot ultimately be forced into arbitration, his suit at least has a 'connection with' the contracts governing the transaction out of which his claims arise.").

Furthermore, that a petition for arbitration of these claims has already been filed before the Philippine NLRC shows that it is more than merely "conceivable" that the arbitration clauses will affect the disposition of this action. *See Freaner*, 2011 WL 5596919, at *4 ("Here, Defendants argue that '[t]here is indeed far more than a reasonable possibility that the arbitration clause will be asserted. It has already happened.' . . . . Indeed, both Plaintiff and Defendants have filed motions to compel arbitration. Though the parties have as yet been unable to agree on an arbitrator, because the arbitrator's decision will ultimately determine the underlying issues, the arbitration agreement could conceivably affect the outcome of the plaintiff's suit. Thus, it is clear that the agreement relates to the subject matter of the action under § 205." (internal citations and quotation marks omitted)).

Defendants have made a sufficient showing that the arbitration agreements provided in the POEA Agreement and the Tri Marine Agreement "relate to" Plaintiff's claims. Therefore, the requirements to show removal jurisdiction pursuant to § 205 are satisfied. Plaintiff's Motion is **DENIED**, without prejudice to its renewal in connection with the litigation of the issues related to the enforceability of the arbitration clauses.

### IV.    Conclusion

For the reasons stated in this Order, the Motion is **DENIED**.

Consistent with the order made during the June 27, 2016 hearing, the parties shall file a Joint Report on or before July 7, 2016, in which they state their collective and/or respective views as to the following issues: (i) an agreed upon settlement method in this action, and the status of that process; (ii) the most efficient manner in which to proceed with this action in light of the pending arbitration in the Philippines where certain parallel issues apparently have been presented; (iii) whether Defendants intend to file a motion to compel arbitration and the anticipated date of its filing; and (iv) what discovery Plaintiff seeks regarding arbitrability should Defendants bring a motion to compel arbitration, and the expected amount of time to complete such discovery so that a response to a motion to compel can be presented. Upon review of the Joint Report, the Court will set further dates in this matter, which may include those that would apply in the event that the matter is not remanded or arbitrated.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | ak | |